The next case for argument is 23-1063, In Re. Advanced Cell Diagnostics. Good morning. Good morning, Your Honors, and may it please the Court. There are several reasons in this case that the Board's factual findings are sufficiently flawed to warrant a determination by this Court that they are not supported by substantial evidence. The emphasis here or the entirety of the argument, do we all agree that these three references in combination have it all? It's just a matter of motivation to combine the references? Is that what's at stake here? And reasonable expectation of success, Your Honor. I think we would agree that Kenny and Urdia and Ward each teach individual elements of the claims, but that the motivation to combine these references to ultimately arrive at the methods that we're claiming and the reasonable expectation of success, both of those are missing. So yes, Kenny teaches an in-situ hybridization method using a series of nucleic acid-based probes, so those are in morphologically intact cells. Urdia teaches a method of detecting nucleic acids in lysed cells on a solid support, so it's a solution phase assay, which is a very different context. And Ward teaches multiplexed detection. Is the problem here with reasonable expectation of success, is it localized to Urdia and the fact that it's, what, in vitro? That is one element of it, Your Honor, yes. So I can certainly address reasonable expectation of success first. So what we've argued is that, again, Kenny teaches detection of nucleic acids in morphologically intact cells, so it's known as an in-situ hybridization assay. Urdia teaches a solution phase assay in which, as we've explained and as Dr. Urdia explained in his declaration, the cells are lysed, so you're opening them up and you're using a number of chemical components to disrupt the cells and destroy those components and then pull the target nucleic acid down onto a solid support and then detect it there after you've washed the other cell components away. Is it that process that you argue leads to an unreasonable expectation of success? That is one element of our argument, Your Honor, yes, that's right, is that you wouldn't reasonably expect success in modifying Kenny's assay in the way that you would need to when you combine it with the teachings from Urdia. You wouldn't reasonably expect success in making that combination because of the different environments in which those assays are conducted. That is one of our reasonable expectation of success arguments. It also goes to motivation to combine, however. So in combining them in the first place, again, so Kenny's method uses a single nucleic acid-based probe, which it calls a target probe, that binds to the target nucleic acid first, and then after it binds, then it builds its amplification system in order to detect it. And Urdia, and what's been cited by the examiner, is an element of Urdia that's shown in Figure 11, which we cited in our brief, in which it pulls down the target nucleic acid onto a solid support and then it binds to what it calls label extender molecules, which is analogous to the target probe in Kenny. It's the thing that binds to the target nucleic acid. And then, again, it binds its label probe. And our position is that first, one skilled in the art, when viewing these references at the time of the invention, when it was looking at those disparate teachings in the very different context, although they're both detecting nucleic acids, one skilled in the art with their knowledge at the time would not have been motivated to apply a probe used in a solution phase assay in that very different context to the in vitro assay of Kenny. Why? Because that was a new unknown process? It's just a very different environment in which to do it. So both of them individually, yes or no. Kenny discloses one and Urdia discloses the other. But because the environment is so different, so in an in situ hybridization assay, again, that's done in what's called morphologically intact cells. So all of the native cellular structures, all of the proteins. Why is the environment different? Is it because Urdia has this solution-based process in combination with an in situ probing? Or in vitro probing? Urdia is entirely in a solution phase. So you can call that an in vitro process. Some refer to it as, but it's not in situ. If the solution process leaves you with a more stable collection or a cleaner universe of the sample that you're going to probe, why wouldn't that be something that a procedure would look at? Well, our claims are in situ. So our claims are directed to a method of detecting two or more nucleic acid targets within an individual cell. So that's the environment that the claimed methods are conducted in. So what Urdia is doing in that different setting, you're right, it is a cleaner environment. What it's done is the cells are broken open, subjected to conditions that destroy a number of the native biological materials. The target is pulled down onto the solid support. And, again, this is all shown in Figure 11 of Urdia. And then there's washing steps, and those are disclosed in Urdia itself, which remove all of those off-target components. And so getting those probes that you would have to use from Urdia in combination with Kenny to arrive at the methods that are claimed in this patent application, you would have to take that probe configuration that's used in Urdia's solution phase assay and then apply it into an in situ setting, where, again, all of the morphologically intact cellular structures are there. You have off-target nucleic acids, you have off-target proteins,  So our claims are in situ. And then where Urdia is being used to modify Kenny is in solution, which is just a very different context. And we've made that argument throughout prosecution of the application, before the board, and... Let me ask you, I mean, there are several arguments made here. But, finally, the board rejected your reliance on the declarations. So if we start from there, and if we assume that the board... We would affirm the board on its... A reasonable basis for rejecting the declarations, where does that leave you? I mean, is a lot of the evidence or the argument you're relying on here based on those declarations? And if we agree with the board, or at least defer to the board in its rejection of those analysis because they weren't supported, or whatever, where does that leave us? Your Honor, I think that the arguments that we've made... So the other arguments that were made by the board, the way that they combined the teachings of Urdia with those of Kenny, I think are clearly flawed. And we alluded to that extensively through our brief. Because what it did... So even before you get to the declarations, what the board did was it characterized the way you would need to modify Kenny by applying the teachings of Urdia. It's just to modify that step of how you detect the analyte target probe complex. And that's not the modification that needs to happen to arrive at our claims, which have two steps. We have the step of hybridizing in the cell and in the presence of non-target nucleic acids the capture probe system. And earlier in the claim we referred to the capture probe system having two or more sets of capture probes and each set comprises two or more different capture probes. That's the step that you would need to modify in Kenny in order to arrive at the methods that we're claiming. Because Kenny only uses one target probe and what we have in each set are two. So the board's characterization of that modification as just being, oh, it's just simply a different way of detecting the analyte target probe complex. It boiled it down to that and I think it was four or five times in total when it was discounting or dismissing our arguments. It said, but Kenny teaches that you can detect it anyway. But that's not what you need to do to modify. And so this is where the declarations come in. Because of these repeated errors that were made in the way the board characterized the rejection, this is where, in our opinion, the declarations become of more significant importance because they are from the two very inventors of these references. The standard review here is substantial evidence. Yes, yes it is. And the board found that this hybridization technology and even the nucleic technology is based on technology that had existed for decades. Basic nucleic acid hybridization technologies, yes. It had certainly been known for decades. I believe the first report of fluorescence in situ hybridization known as FISH was from 1969. But nucleic acid hybridization is a very broad field. So when you just take one nucleic acid and hybridize it to another and then use that for a detection method, yes, overall nucleic acid detection was certainly known. But I think the evidence throughout the record here is sufficient to show the different ways that these individual references do it. A broad field in general is known. But the individual methods cited in each of the references are very different. Again, the only findings that the board made on reasonable expectation of success were just first. It found that the artisan would have had a reasonable expectation of success by the combination of known methods of detecting nucleic acids in cells. Which that was one statement it made, which is flawed. Your argument shows to me to be more a motivation to combine. It is both. Expectation of success. Yes. But I think it is both. So it's motivation to combine. But the particular argument we've made. You only argue reasonable expectation of success. I believe we did argue motivation to combine, Your Honor. No, you did. I'm not saying you didn't. But with respect to the combination of Ordea and how that technology works, that seems to be, you phrase that as more of a reasonable expectation of success. I think it is, Your Honor. And I think that what we've argued is that the board's findings on reasonable expectation of success were conclusory and limited to one or two statements that generally this technology is known. But that's not a sufficient factual finding in our view under KSR. Thank you. Good morning, Your Honors. And may it please the court. Substantial evidence supports the board's findings that a skilled artisan would have been motivated to improve Kenny's in-situ hybridization method using Udea's TL capture probe system that would be to increase the detection specificity and to decrease background. In other words, the rejection was based on using Udea's sets of TL capture probes, which cooperatively bind then to a single label probe, and that would increase and improve Kenny's detection method. And that finding is sufficient to affirm the board's decision of a motivation to combine. The board also correctly rejected ACD's arguments about the differences between Kenny's in-situ hybridization method on the one hand and Udea's solution-based methods on the other. The board found that Kenny established that a person of skill in the art would understand and reasonably expect probes, and that includes the TL capture probes, could get to their targets even in the context of the cellular setting of an in-situ hybridization assay. What's your response to the other side's argument that the board mischaracterized the motivation necessary to modify Kenny? So I believe you're referring to their arguments about that when the board says any method can be used to detect the TL analyte complex in Kenny. The board clearly understood the examiner's rejection to be based on the sets of capture probes in Udea that then bind to a single label probe, and I think that the examiner's rejection is quoted at JA-12 where it talks about using an artisan would be capture probes to the target and the label probe. But I think it's also clear in the board's discussion at JA-12 where the board is rejecting the arguments between the differences between in-situ hybridization and solution-based assays, and this is the second full paragraph, third sentence when it says for the reasons discussed above. The board goes on, a person of skill in the art would understand and reasonably expect that once a TL probe is hybridized to its target, so that's the capture probe and the label extender probe of Udea, whether it's in-situ or solution, any labeling probe or probe system could be used, and that's what the board means when they're modifying Kenny, that any label probe can be used to detect the TL probe, and the label probe is the detection step. It's then detecting the TL DNA target complex. It necessarily then binds to a second TL capture probe because the whole point of using Udea's label probe system is to cooperatively bind two sets of TL capture probes. Again, the board said the motivation to do this is this would actually decrease your background and increase your detection sensitivity. Did it not trouble us on page 16 of the board where the board says, in sum, the examiner's conclusion of obviousness is founded in decades-old basic nucleic acid hybridization that was not only well-known to those of skill in the art at the time that it was expected to work. That's a little odd, right? I mean, that's a little conclusory. Well, I think the board is saying more than just that it's known, but that it's expected to work as intended so that it's predictable. The board had earlier said, pointing to Kenny, that one of skill in the art knows how to design probes that don't bind non-specifically in the non-situ hybridization context. So the board is relying on Kenny's designing of the probes and teaching how to use probes, including a set of label probes, in-situ hybridization as that one of skill in the art can design probes and expects them to work as they are designed. So I think it's more than conclusory. It's based on the teachings of the prior art and what the prior art teaches about the known techniques of in-situ hybridization. The examiner also had relied on the fact that Kenny discusses in the background section that it took the branch DNA probes, which are the TL capture probes, and they had been used in solution-based assays and then was able to use them in an in-situ hybridization context. So this basic technology has flowed back and forth between solution-based assays and in-situ hybridization assays, and they're not two separate technologies that don't cross-talk. So I think that what the board says about rejecting the argument about the differences between in-situ hybridization and solution-based assays, there's substantial evidence both for a motivation combined and a reasonable expectation of success. I could also answer questions about the reliance on Ward, which was relied on for the multiplexing, detecting two target nucleic acids, and substantial evidence for that, and then the board's rejection of the declarations because they didn't have an evidentiary basis and were contradicted by the evidence of the prior art, the teachings of the prior art. If this court has no more questions, we'd ask the court to affirm the board's decision. Thank you, Your Honors. Your Honors, there's just a few additional points I'd like to clarify here. My colleague referred to the fact that Kenny and the board's reliance on Kenny and the fact that it disclosed an in-situ method that appeared to work in its context, and yes, that is the case, and the board also did make a statement that one skilled in the art would understand how to design probes that don't find non-specifically in-situ, but those are individual probes. So when you have an assay such as this that necessarily requires the cooperative hybridization of a number of different probes, they all have to work together to bind to the target nucleic acid and then be detected. Each individual probe will encounter non-specific binding in that context, and so when you're combining a number of them together, that's where the problem occurs, and Dr. Urdia did refer to this very specifically in his declaration where he said that the controlling non-specific binding in an in-situ assay is significantly more complex, and that makes sense because of all those off-target nucleic acids. So I would disagree that it's sufficient to say that because one skilled in the art could design an individual probe that would minimize off-target binding, that would necessarily lead to a conclusion that in these systems that have multiple nucleic acid based probes that all must hybridize in the detected, that that means that there's substantial evidence supporting all of those arguments there. Also, the other issue that we raised that I want to come back to again is despite the board's ultimate conclusion that if you just looked at a picture of what you end up with as a result of our method claim that all of those pieces are in the prior art that that would necessarily render obvious the method steps that we have. I would disagree with that. Again, our claimed methods require those two steps. First, you hybridize the capture probe system, and then you capture to that the label probe system. And the director's position is that that second TL probe is a part of that label system, but it's not. In the claimed methods, you have to have a set of capture probes that have two different capture probes, and that's added in that step of hybridizing, not in the step of detecting. So, if you attempt to rescue the board's analysis where, again, they repeatedly characterize that step in Kenny of detecting, that's where the problem comes in, is that you don't ultimately end up with the methods that we're claiming. The other thing I do want to comment on is the declarations. Again, there's been an argument that they're insufficiently supported by evidence. Again, I would look to the Ulrich case, and that case did discuss the proposition that these statements were made by individuals that were uniquely within their competence to opine on these issues. And when we have the number of errors that were made by the board, and how they characterized the claims, and how you would have to combine these references, and then you have declarations, the two authors of two of the cited references, and again, especially with Dr. Urdia, he was the CSO of Bayer Corporation, and worked extensively in nucleic acid diagnostics. We have their statements that these would not have been obvious, and they do have reasons for those. They didn't conclude they would have been obvious. They concluded Dr. Urdia stated that you wouldn't reasonably expect success, and Dr. Keddy commented on motivation to combine and reasonable expectation of success. When we have those up against the errors the board made, those declarations should be given some consideration. Happy to answer further questions. Thank you. We thank both sides, and the case is submitted.